NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| CURTIS DONALD NOBLE,<br><br>                    Appellant,<br><br>          v.<br><br>STATE OF ALASKA,<br><br>                    Appellee. | Court of Appeals No. A-11041<br>Trial Court No. 4FA-10-4690 CR<br><br><br>O P I N I O N<br><br><br>No. 2473 — September 4, 2015 |

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Randy M. Olsen, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. W. H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

The police stopped Curtis Donald Noble for failing to use his turn signal when he entered and left a roundabout. During their ensuing contact with Noble, the

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

police discovered that he had been drinking, and Noble was later convicted of felony driving under the influence.

In this appeal, Noble challenges the legality of the traffic stop. He argues that Alaska's existing regulations regarding a motorist's use of turn signals do not apply to roundabouts. For the reasons explained in this opinion, we agree with Noble that our state's existing traffic regulations do not cover a motorist's use of turn signals when negotiating a roundabout. Therefore, Noble did not commit a traffic violation by failing to signal when he entered and left the roundabout.

However, when Noble's case was litigated in the superior court, the State advanced other justifications for the traffic stop. The superior court did not expressly rule on those alternative justifications, so we now remand Noble's case to the superior court to allow the court to make findings on those proposed alternative justifications for the stop.

*Underlying facts*

On November 1, 2010, the campus police at the University of Alaska Fairbanks received a report of a reckless driver in a dark-colored Toyota, possibly a Camry, headed toward the campus recreation center.

According to the caller, the driver of the car was male, possibly Hispanic. The caller furnished the numeric portion of the driver's license plate, and the caller told the police that the three letters of the license plate were either "FJH" or "FHJ".

Two University police officers began to look for the driver of the Toyota. While these officers were looking for the car, their dispatcher searched the department's database for a vehicle matching the caller's description of the car. The dispatcher soon

found an entry for a silver Toyota Camry with a license plate that matched the one described by the caller. This vehicle was registered to Walter Galauska.

About 20 minutes later, the police found this vehicle in a campus parking lot. The police decided to keep this vehicle under surveillance for a while, in case the driver returned.

Just before 1:00 p.m. — *i.e.*, approximately 45 minutes after the initial 911 call to the police dispatcher — a man (later identified as Noble) approached the Toyota and got into the front passenger seat. After sitting there for a short time, the man got behind the wheel, started the car, and drove away. The police followed him in an unmarked car.

When Noble drove through a nearby traffic roundabout, he did not use his turn signal, either upon entering or leaving the roundabout. Shortly after Noble left the traffic circle, the police pulled him over — ostensibly, because Noble had committed two traffic infractions by failing to signal upon entering and leaving the roundabout.

*Alaska law relating to a motorist's use of turn signals, and why we conclude that Alaska's existing law does not require signaling at roundabouts*

The issue before this Court is whether Alaska law requires motorists to use turn signals when negotiating a roundabout.

(Alaska law defines "roundabout" as "a circular intersection [constructed] around a rotary traffic island, where two or more roadways join and the vehicular traffic is directed to travel in a single specified direction around the perimeter of the ... traffic island." *See* 13 AAC 40.010(a)(66).) [1]

---

[1] Compare the Federal Highway Administration's *Manual on Uniform Traffic Control*
(continued...)

Alaska has several traffic regulations that expressly apply to roundabouts. For instance, a driver entering a roundabout must yield to any vehicle that is already on the circulating roadway in the roundabout. [2]  Drivers must not change lanes in a roundabout, or exit a roundabout, until the movement can be made safely. [3]  And within a roundabout, a vehicle in front has the right-of-way over the vehicles behind it. [4]

Alaska also has a traffic regulation — 13 AAC 02.215 — that governs the use of turn signals.  But this regulation does not contain any provisions that expressly refer to roundabouts.

Subsection (a) of the regulation requires motorists to signal their intention to "turn a vehicle or move [a vehicle] right or left upon, onto, or off a roadway".  And subsection (b) of the regulation declares that when a motorist signals their intention to turn or move their vehicle to the right or left, the signal "must be given continuously during the last 100 feet traveled by the vehicle before turning".

Alaska's regulation on the use of turn signals mirrors the provisions of Section 11-604 of the 1969 Uniform Vehicle Code (Part 2, "Rules of the Road"). [5]  Subsection (a) of Uniform Vehicle Code § 11-604 declares, "No person shall

_____

[1]  (...continued)
*Devices* (2009 edition, incorporating revisions 1 and 2), Section 1A.13, ¶ 180, which defines "roundabout" as "a circular intersection with yield control at entry [*i.e.*, yield signs at all points of entry], which permits a vehicle on the circulatory roadway to proceed, and with deflection of the approaching vehicle counter-clockwise around a central island."
   *See* http://mutcd/fhwa.dot.gov/pdfs//2009r1r2/pdf_index.htm

[2]  13 AAC 02.120(d).

[3]  13 AAC 02.120(f).

[4]  13 AAC 02.120(e), (g).

[5]  The Uniform Vehicle Code is model legislation dealing with traffic laws.  It was
(continued...)

turn a vehicle or move right or left upon a roadway ... without giving an appropriate signal in the manner hereinafter provided." And subsection (b) of Uniform Vehicle Code § 11-604 declares that "a signal of intention to turn or move right or left ... shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."

One might assume that these signaling rules apply to all roads and all intersections. But these provisions were drafted before roundabouts became widespread in this country.

The Uniform Vehicle Code has not been amended in the past fifteen years. According to the website of the National Committee on Uniform Traffic Laws and Ordinances, the last amendments to the Uniform Vehicle Code were approved in the year 2000. (Other changes were suggested in 2002, but have not yet been approved.) And none of these changes mention roundabouts — because very few states had to worry about roundabouts at the turn of the twenty-first century.

According to *Modern Roundabout Practice in the United States* (1998), a publication of the National Cooperative Highway Research Program,[6] the first two modern-style roundabouts in the United States were constructed in 1990; the first roundabout built to replace a signal-controlled intersection was constructed in 1992; and the first dual-circle roundabout built to control the entrance and exit ramps of a freeway

---

[5] (...continued)
drafted by the National Committee on Uniform Traffic Laws and Ordinances, a private non-profit organization. Many of the members of this organization are state governments. See www.ncutlo.org. — "Who We Are and What We Do".

[6] Available at: http://onlinepubs.trb.org/onlinepubs/nchrp/nchrp_syn_264.pdf

was built in 1995. [7] As of October 1997, there were only three dozen roundabouts in the entire United States — none of them in Alaska. [8]

In fact, according to the Alaska Department of Transportation's website, Alaska had no roundabouts in 2000 (the year in which the Uniform Vehicle Code was last amended). [9] Even today, there are fewer than two dozen in our entire state. [10]

Because the signaling provisions of the Uniform Vehicle Code (and all the state traffic codes that are based on the Uniform Vehicle Code) were written before there were any modern-style roundabouts, various agencies — both governmental and non-governmental — have openly acknowledged that our existing traffic laws can not readily be applied to roundabouts.

For instance, the Federal Highway Administration's publication, *Roundabouts: An Informational Guide* (2nd ed. 2010), [11] acknowledges that "[t]he 2000 Uniform Vehicle Code (UVC) ... does not provide specific guidance for roundabouts." [12] This publication notes that "[s]ome states have begun to update their [vehicle] code to include guidance for roundabouts." [13]

---

[7] *Id.*, page 12.

[8] *Id.*, pages 13-14.

[9] *See* http://www.dot.alaska.gov/stwddes/dcstraffic/roundabouts.shtml

[10] *Ibid.*; *see also* http://www.alaskaroundabouts.com/akround.html

[11] National Cooperative Highway Research Program, Report 672, available at: http://onlinepubs.trb.org/onlinepubs/nchrp/nchrp_rpt_672.pdf

[12] *Id.*, page 2-21.

[13] *Ibid.*

Likewise, the CH2MHill white paper on the design and implementation of roundabouts, "Modern Roundabouts Training Workshop", [14] acknowledges that one of the "legal considerations" for governments that are considering the construction of roundabouts is that "[the] Uniform Vehicle Code ... does not provide clear directions on roundabouts". [15]

The underlying difficulty is that the signaling requirements of 13 AAC 02.215 and UVC § 11-604 were designed for linear intersections. These requirements become problematic when applied to roundabouts, because of the way in which the entrances and exits of roundabouts are configured, and the way traffic flows through a roundabout.

For example, in the present case, the State argued that Noble violated the signaling law by entering a roundabout without signaling. As we have explained, 13 AAC 02.215(a) requires motorists to signal their intention to "move [their vehicle] right or left upon, onto, or off a roadway". And it is true that motorists must "move" their vehicles to the right as they enter a roundabout (because roundabouts are circular, and because traffic moves counterclockwise within a roundabout).

But when motorists move to the right upon entering a roundabout, they are simply following the roadway — much as if they came to a curve in the road. It seems counter-intuitive to require all motorists to activate their right-turn signals when entering a roundabout if they simply wish to drive around the center island and continue in their original direction of travel.

---

[14] Available as a pdf download at: www.greatstreets-stl.org. Follow the link to "Residential Neighborhood", then, under the category "Design", follow the link to "Choices & Guidelines", then "Intersections", then click on the "Resources" tab and choose "Roundabouts 101 - The Modern Roundabout".

[15] *Id.*, page 43.

Moreover, if a motorist *did* activate their right-turn signal, this right-turn signal might well confuse other motorists who were already inside the roundabout, or who were waiting to enter the roundabout from a different direction. Seeing the right-turn signal, these other motorists might easily suppose that the signaling motorist actually intended to turn right (onto an intersecting road) rather than continuing straight through the roundabout.

Because of the substantial difficulties in trying to apply the existing turn-signal regulations to the new environment of the roundabout, at least one state has enacted new regulations that expressly govern roundabouts. [16] Most other states have simply adopted an *ad hoc* approach — not amending their codified law, but instead creating web sites and informational pamphlets that contain instructions to motorists about the signals they should use when negotiating a roundabout (even though these instructions are apparently not based on the codified law).

For example, the New York Department of Transportation web site advises motorists who are leaving a roundabout to use their right turn signal to let other drivers know that they intend to exit the roundabout — but the web site ignores New York's "signal for at least 100 feet" rule [17] and instead tells motorists to use their signal "as soon as [they] pass the exit prior to [their] desired exit". [18] And the web site does not instruct motorists to use a turn signal when entering a roundabout.

---

[16] *See* Oregon Statute § 811.400.

[17] New York Laws, Title 7, Article 28 (Vehicle and Traffic Law), § 1163(b).

[18] https://www.dot.ny.gov/main/roundabouts/guide-users/motor-vehicle

The Washington Department of Transportation's web site contains no recommendation for using turn signals in single-lane roundabouts, but the site instructs motorists to use their right turn signal before they exit a multi-lane roundabout. [19]

The State of Wisconsin's web site dealing with roundabouts instructs motorists to use a turn signal in one circumstance: they should use their right-turn signal to indicate that they are getting ready to leave the roundabout. [20]

The Federal Highway Administration's web site tells motorists the same thing: that when they are negotiating a roundabout, they should use their turn signal in one circumstance: "to indicate [their] intention to exit". [21]

The State of Iowa's web site gives the following advice about turn signals: " 'Should I use my turn signal?' *Answer*: Yes. Especially when exiting the roundabout. This allows vehicles waiting to enter the roundabout to know your intentions." [22]

In contrast, the Commonwealth of Virginia has two different web sites that provide inconsistent recommendations regarding the use of turn signals. One of these web sites tells motorists to always signal their turn "just past the exit prior to [their] desired exit" (regardless of which exit they intend to take). [23] The other web site tells motorists (1) that if they intend to turn right (*i.e.*, to go approximately 90 degrees around the circle), they should use their right-turn signal from the time they approach the roundabout; (2) that if they intend to go straight through the roundabout, they should not signal; and (3) that if they intend to turn left (*i.e.*, to go approximately 270 degrees

---

[19] http://www.wsdot.wa.gov/safety/roundabouts

[20] http://wisconsindot.gov/Pages/safety/safety-eng/roundabouts/works.aspx

[21] http://safety.fhwa.dot.gov/intersection/roundabouts/fhwasa08006/

[22] http://www.iowadot.gov/traffic/roundabouts/roundabouts_faqs.htm

[23] http://www.virginiadot.org/info/resources/roundabouts.pdf

around the circle), they should use their left-turn signal when they approach the roundabout, then switch to their right-turn signal "when passing the exit before the one to be taken". [24] (Some of these recommendations are less than intuitive.)

Finally, we turn to the information available to Alaska motorists concerning roundabouts.

The roundabout at issue in the present case is located on the campus of the University of Alaska at Fairbanks. The Fairbanks campus has a web site — http://news.uaf.edu/roundabout-road-rules/ — that provides guidance to motorists on how to use this roundabout.

According to the University's web site, (1) no signal is needed when entering the roundabout, but (2) a right-turn signal is advisable when leaving the roundabout:

> While the roundabout on campus seems to flow pretty smoothly, there may be some confusion regarding the use of turn signals. No signals are required when entering the roundabout, but you will want to use your right hand turn signal to indicate your exit point from the roundabout. The Alaska Department of Transportation has more information about roundabouts online.

As indicated in the text just quoted, the Alaska Department of Transportation sponsors a web site dealing with roundabouts: http://www.alaska-roundabouts.com. This web site includes a section entitled, "How to Use a Roundabout", but this section contains no instructions to motorists regarding the signals they should use when entering a roundabout, driving within it, or leaving the roundabout.

---

[24] www.virginiadot.org/info/resources/round/ModelHighwayCodeforRoundabouts.pdf *Note*: The address of this web site contains the language, "Model Highway Code for Roundabouts". Unfortunately, there is no such model code.

To sum up this discussion: There is a section of Alaska's traffic law, 13 AAC 02.215(a)-(b), that prescribes rules for when motorists must signal their intentions. But these rules were formulated before we had roundabouts, and it is difficult — and sometimes potentially dangerous — to apply these rules to roundabouts.

As we have explained, it is widely acknowledged that provisions like 13 AAC 02.215 — *i.e.*, provisions drawn from the Uniform Vehicle Code — do not apply to roundabouts. Many states have published *ad hoc* advisory rules for the use of turn signals in roundabouts, but these advisory rules are not consistent among the states, and many of these rules are patently inconsistent with the provisions of the Uniform Vehicle Code.

The result is that no one can determine, with any degree of surety, what rules apply. For instance, in the present case, police officers employed by the University of Alaska Fairbanks stopped Noble because they believed that he committed a traffic infraction by failing to use a turn signal when he entered the campus roundabout. But the University's own web site advises motorists that no signal is required when entering this roundabout.

The University police officers also believed that Noble committed a traffic infraction by failing to activate his turn signal at least 100 feet before he exited the roundabout.

As we explained earlier in this opinion, 13 AAC 02.215(b) requires motorists to signal for at least 100 feet before turning left or right. But just as it is unclear whether the act of entering a roundabout constitutes a right turn, it is also unclear whether the act of leaving a roundabout constitutes a turn (either to the left or the right).

– 11 – 2473

Moreover, the entrances and exits of many roundabouts are less than 100 feet apart.[25] According to the testimony in the present case, this was true of the roundabout located at the University of Alaska Fairbanks.

At the evidentiary hearing, one of the police officers candidly admitted that it would have been potentially dangerous for Noble to comply with the 100-foot rule. The officer explained that a lengthy right-turn signal could confuse other drivers who were waiting to enter the roundabout; it might cause them to falsely conclude that the signaling driver was getting ready to leave the roundabout at a closer exit — thus potentially leading to a collision.

In sum, there is no clear way to apply the signaling provisions of 13 AAC 02.215 to roundabouts. Theoretically, this Court could attempt to construe this regulation to clarify how its signaling rules might apply to roundabouts. But there is no obvious way to do this. The departments of transportation of various states, facing the same problem, have created different *ad hoc* rules for signaling in roundabouts. The differences in these *ad hoc* rules reflect differing assessments of the safety implications of requiring (or not requiring) signaling in various circumstances, as well as the practicality of enforcing these rules.

In other words, any "clarification" of the law in this area would actually amount to creating new rules, based on a weighing of facts and policies that is normally entrusted to legislatures or executive agencies. For this reason, we decline to stretch the

---

[25] For example, the CH2MHill white paper on roundabouts (see footnote 14) divides them into six categories by size. *Id.* at 14. The smallest size, the "mini-roundabout", has an inner circle with a diameter of 45 to 80 feet (*i.e.*, a circumference of between 140 to 250 feet). The next size up, the "urban compact roundabout", has an inner circle with a diameter of 80 to 100 feet (*i.e.*, a circumference of between 250 to 315 feet). In roundabouts of these sizes, entrances and exits will normally be less than 100 feet from each other.

language of 13 AAC 02.215 to try to make it apply to roundabouts. Instead, we hold that the existing regulation simply does not apply to roundabouts.

Accordingly, Noble did not violate the provisions of 13 AAC 02.215 when he failed to use his turn signals either when entering or leaving the roundabout in this case.

(We encourage either the legislature or the Department of Public Safety to address this issue if they believe that it is appropriate to have codified law defining the use of turn signals in roundabouts.)

*Why we remand this case to the superior court for further consideration of Noble's motion to suppress*

When Noble's suppression motion was litigated in the superior court, the State advanced alternative theories as to why the traffic stop was justified, apart from the turn signal issue. The State argued that the stop was justified because Noble matched the description of the registered owner of the vehicle, and because there was an outstanding warrant for the owner's arrest. The State also argued that the police had probable cause to arrest Noble for reckless driving, based on the contents of the earlier 911 call to the campus police dispatcher.

These proposed alternative justifications for the stop remain unresolved. We therefore remand this case to the superior court to allow the court to rule on these other theories.

*Conclusion*

We REVERSE the superior court's ruling that the traffic stop in this case was justified because Noble failed to use his turn signals when negotiating the

– 13 – 2473

roundabout. However, we REMAND this case to the superior court for further findings and rulings on the State's proposed alternative justifications for the traffic stop.

We do not retain jurisdiction of this case.