Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 21, 2022

**2022 CO 30**

**No. 20SC717, *McBride v. People*—Tail Lamp Violation—Statutory Construction—Sufficiency of the Evidence.**

In this case, the supreme court considers whether there is liability under section 42-4-206(1), C.R.S. (2021), when a vehicle's tail lamps emit any white light, regardless of whether they emit a red light plainly visible from a distance of five hundred feet to the rear.

The court concludes that section 42-4-206(1) is plain and unambiguous and imposes liability when a motor vehicle's tail lamps do not "emit[] a red light plainly visible from a distance of five hundred feet to the rear."  Nothing in that section mandates that a vehicle's tail lamps must emit only red light.

The court further concludes that because the prosecution did not present substantial and sufficient evidence that would have allowed a reasonable jury to find that the tail lamps of the car that defendant was driving failed to emit a red

light plainly visible from a distance of five hundred feet to the rear, the evidence was insufficient to support defendant's conviction for a tail lamp violation.

Accordingly, the court reverses the judgment of the division below and remands this case for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2022 CO 30

### Supreme Court Case No. 20SC717
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA2249

### Petitioner:

Timothy Robert McBride,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Reversed
*en banc*
June 21, 2022

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Jacob B. McMahon, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
John T. Lee, First Assistant Attorney General
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court, in which **JUSTICE MÁRQUEZ, JUSTICE HART, JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.
**JUSTICE HOOD,** joined by **CHIEF JUSTICE BOATRIGHT**, dissented.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 We granted certiorari to decide "[w]hether there is liability under section 42-4-20[6](1), C.R.S. (2020), where a vehicle's tail lamps emit any white light, regardless of whether they emit a red light plainly visible from a distance of five hundred feet to the rear."

¶2 We now conclude that section 42-4-206(1), C.R.S. (2021), is plain and unambiguous and means what it says: there is liability under that section when a motor vehicle's tail lamps do not "emit[] a red light plainly visible from a distance of five hundred feet to the rear." Nothing in that section mandates that a vehicle's tail lamps must "shine only red light," as the division below concluded. *See People v. McBride*, 2020 COA 111, ¶ 13, 490 P.3d 810, 814. And because the prosecution did not present substantial and sufficient evidence that would have allowed a reasonable jury to find that the tail lamps of the car that defendant Timothy McBride was driving failed to emit a red light plainly visible from a distance of five hundred feet to the rear, we conclude that the evidence was insufficient to support his conviction for a tail lamp violation.

¶3 We thus reverse the judgment of the division below and remand this case for further proceedings consistent with this opinion.

# I. Factual and Procedural Background

¶4      One night, while surveilling an area near a hotel for illegal drug trafficking, a Mesa County sheriff's deputy in an unmarked patrol car watched a Lincoln Town Car with two occupants pull into the hotel's parking lot, park for less than ten minutes without anyone exiting the vehicle, and drive away. The deputy relayed this information to the other members of his team, and a second deputy began following the Lincoln from another unmarked patrol car, looking for a reason to pull the Lincoln over.

¶5      As she followed the Lincoln, the second deputy noticed that the car's tail lamps were broken and that someone had tried to fix them with red tape but that the tape had melted, allowing the bulbs to emit "some white light." The second deputy also observed the driver of the Lincoln commit what she perceived to be a second traffic infraction, namely, failing to use a turn signal when exiting a roundabout. At that point, the second deputy relayed to a third deputy, who was in a marked patrol car, what she had seen and asked the third deputy to execute a traffic stop.

¶6      Upon pulling behind the Lincoln, the third deputy saw that the car's tail lamps were damaged and were emitting white light (he did not indicate that he saw only white light). He then initiated the traffic stop, identified the Lincoln's driver as McBride and his passenger as M.S., and proceeded to use dispatch to run

4

both occupants through law enforcement databases to determine whether they had any prior criminal history. This database search revealed that McBride had an outstanding warrant for his arrest, and the deputy arrested him.

¶7 In the meantime, additional officers and a police dog arrived on the scene, and the dog alerted to the presence of illegal narcotics in the Lincoln. Officers then searched the car and found a baggie containing methamphetamine and a handgun that was pushed between the driver and front passenger seats under a purse. M.S. also had drug paraphernalia on her person.

¶8 As a result of the foregoing, the prosecution charged McBride with (1) possession of a controlled substance, (2) a special offender sentence enhancement for possessing a firearm during the commission of the first offense, (3) possession of a weapon by a previous offender ("POWPO"), (4) a tail lamp violation, and (5) a traffic infraction for failure to signal for a turn.

¶9 The case proceeded, and McBride filed a motion to suppress all evidence, police observations, and statements obtained as a result of the traffic stop, arguing, among other things, that the stop was unlawful because the deputies did not have a reasonable suspicion that McBride had committed any traffic offenses. Specifically, as pertinent here, McBride asserted that section 42-4-206(1) requires that a vehicle's tail lamps emit a red light plainly visible from a distance of five hundred feet to the rear. He argued that even if the deputies observed a white

5

light, it was inconceivable that they did not also observe a red light, and "there is no statutory prohibition to any white light so long as the red light is visible."

¶10 The trial court conducted a hearing on McBride's motion and then denied that motion, ruling that the deputies had a reasonable suspicion that McBride had committed the two traffic offenses. As to the tail lamp violation, the trial court observed that in *People v. Brant*, 252 P.3d 459, 463 (Colo. 2011), this court had stated, "Driving with a broken taillight justifies an investigatory vehicle stop." In addition, the trial court reasoned that because the red tape on the Lincoln's tail lamps was "ragged and pulling away" so that white light could "leak out of the red area," it was reasonable for the deputies to have concluded that the tail lamps would not emit a red light visible from a distance of five hundred feet.

¶11 The case proceeded to trial, and at trial, both deputies who had driven behind the Lincoln testified as to the condition of its tail lamps. The second deputy explained that after she began following the Lincoln, she observed from her position "immediately behind" that vehicle that its tail lamps were broken and that someone had tried to fix them by applying red tape that had subsequently melted. This allowed the deputy to see "some white light emitting from those bulbs." The third deputy similarly testified that when he got behind the Lincoln, he saw that its "tail lights were damaged and they were emitting white light." Based on this observation and the information that he had received from the

6

second deputy, he then initiated the traffic stop. Through the third deputy, the prosecution also introduced two photos of the Lincoln's rear bumper and tail lamps, and the deputy explained that the photos showed the "red tape that was sort of pasted around the broken tail lights" on both sides of the car.

¶12 After the conclusion of the prosecution's case-in-chief, McBride moved for a judgment of acquittal on all counts, but the trial court denied that motion.

¶13 The jury subsequently convicted McBride of POWPO and the two traffic offenses but acquitted him of possession of a controlled substance, which mooted the special offender sentencing enhancement charge. Thereafter, the trial court imposed a two-year prison sentence on the POWPO offense and assessed monetary penalties for the two traffic infractions.

¶14 McBride appealed, arguing, among other things, that (1) the evidence at trial did not support the traffic infractions, (2) the trial court had erred in denying his suppression motion, and (3) the evidence did not support his POWPO conviction. The division ultimately agreed that the evidence did not support either the traffic infraction for failure to signal or the POWPO conviction, but it affirmed the finding of a tail lamp violation. *McBride*, ¶¶ 1, 8–9, 21, 40, 66–67, 490 P.3d at 812–13, 815, 818, 822.

¶15 Regarding the tail lamp violation, the division reasoned that to promote uniformity and apply the statute's plain language, "'red' must mean 'red' and only

7

'red.'" *Id.* at ¶ 14, 490 P.3d at 814. In support of this determination, the division observed that the statute does not say that a tail lamp must shine red along with any other colors; it says only "red." *Id.* Moreover, in the division's view, the use of additional colors would detract from the requisite uniformity and the uniform enforcement of the law. *Id.*

¶16 The division further noted that section 42-4-206(3) "requires 'a tail lamp or a separate lamp' to illuminate the rear registration plate 'with a white light.'" *McBride*, ¶ 15, 490 P.3d at 814 (quoting § 42-4-206(3)). This suggested to the division that tail lamps can include white lights, but only to illuminate the rear plate. *Id.*

¶17 And the division observed that other provisions in the traffic code allow or require tail lamps in colors other than red. *Id.* at ¶ 16, 490 P.3d at 814. This indicated to the division that "when the legislature says 'red' it means only 'red'"; when it says another color, it means only that color; and "where more than one color is permitted, the legislature says so." *Id.* at ¶ 17, 490 P.3d at 815. To conclude otherwise and to allow vehicles to emit white light (even if mixed with red) from their tail lamps "could . . . lead to confusion and accidents" because "specific colored lights on a vehicle carry significance" and "[t]his uniformity of lighting helps drivers ascertain what direction a car is facing and whether it is backing up." *Id.* at ¶ 18, 490 P.3d at 815.

8

¶18 The division deemed its interpretation of section 42-4-206(1) to be consistent with that of the majority of other jurisdictions to have considered similar statutes. *Id.* at ¶ 19, 490 P.3d at 815 (collecting cases). In addition, it believed that its statutory construction comported with this court's decision in *Brant*, 252 P.3d at 463, in which we stated that driving with a broken tail lamp justified an investigatory stop for a violation of section 42-4-206. *McBride*, ¶ 20, 490 P.3d at 815.

¶19 Proceeding then to apply its statutory construction to the facts before it, the division concluded that the fact that the Lincoln's tail lamps "emitted both red and white light" justified the traffic stop and supported McBride's conviction of the tail lamp violation. *Id.* at ¶¶ 21, 41–43, 490 P.3d at 815, 818–19.

¶20 McBride petitioned this court for a writ of certiorari, and we granted his petition.

## II. Analysis

¶21 We begin by setting forth our standard of review and the pertinent principles of statutory construction. We then proceed to address section 42-4-206(1) to determine whether the division below erred in deciding that this statute requires tail lamps to emit only red light. *See McBride*, ¶ 13, 490 P.3d at 814. We conclude that, under section 42-4-206(1)'s plain and unambiguous language, the division's construction was incorrect. We end by discussing whether, in light

9

of our interpretation of section 42-4-206(1), the prosecution presented sufficient evidence to support McBride's conviction for a tail lamp violation, and we conclude that it did not.

### A. Standard of Review and Principles of Statutory Construction

¶22 We review both sufficiency of the evidence claims and issues of statutory construction de novo. *McCoy v. People*, 2019 CO 44, ¶¶ 2, 37, 442 P.3d 379, 382, 389.

¶23 In addition, in construing a statute, we seek to ascertain and give effect to the General Assembly's intent. *Id.* at ¶ 37, 442 P.3d at 389. To do so, we first consider the statute's language, assigning its words and phrases their plain and ordinary meanings. *Id.* We read these words and phrases in context, and we construe them according to the rules of grammar and common usage. *Id.* Additionally, we "endeavor to effectuate the purpose of the legislative scheme." *Id.* at ¶ 38, 442 P.3d at 389. In doing so, we read the scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results. *Id.* We do not add words to a statute or subtract words from it. *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007). If the statutory language is unambiguous, then we look no further. *McCoy*, ¶ 38, 442 P.3d at 389. If, however, the statute is ambiguous, then we may consider other aids to statutory

10

construction. *Id.* A statute is ambiguous when it is reasonably susceptible of multiple interpretations. *Id.*

## B. Section 42-4-206(1)

¶24 Section 42-4-206(1) provides, in pertinent part, "To be operated on a road, every motor vehicle . . . must be equipped with at least one tail lamp mounted on the rear, which, when lighted as required in section 42-4-204, [C.R.S. (2021),] emits a red light plainly visible from a distance of five hundred feet to the rear . . . ."

¶25 This statute further provides that vehicles registered in this state and manufactured after the start of 1958 "must be equipped with at least two tail lamps mounted on the rear, . . . which, when lighted as required in section 42-4-204, comply with this section." § 42-4-206(1).

¶26 In our view, the language of section 42-4-206(1) is plain and unambiguous. It establishes that a traffic infraction occurs if a tail lamp, when lighted, does not "emit[] a red light plainly visible from a distance of five hundred feet to the rear." § 42-4-206(1). The statute says that "a red light" must be plainly visible. It does not say that "only" red light must be visible. Nor does it say that a violation occurs if a tail lamp emits any white light, no matter how small and no matter the distance at which such white light may be visible. It requires only that *a* red light be plainly visible from five hundred feet to the rear. In these circumstances, other states construing materially identical statutes have concluded that tail lamps need not

11

emit only red light, and they have rejected assertions that their statutes are violated merely because some white light happened to shine through. *See, e.g.*, *Kroft v. State*, 992 N.E.2d 818, 821–22 (Ind. Ct. App. 2013) (concluding that Indiana's tail lamp statute, which required the lamp to emit "a red light plainly visible from a distance of five hundred (500) feet to the rear," was not violated when white light shined through a dime-sized hole because the statute contained no requirement that "only" red light be visible, and therefore an officer did not have reasonable suspicion to stop the defendant for an alleged tail lamp violation) (quoting Ind. Code § 9-19-6-4(a) (2021)); *Vicknair v. State*, 670 S.W.2d 286, 287 (Tex. App. 1983) (concluding that Texas's tail lamp statute, which required a tail lamp to emit "a red light plainly visible from a distance of 1000 feet to the rear," was not violated when the tail lamp had a cracked lens and white light shined through the crack because no evidence established that red light was not plainly visible from the requisite distance) (quoting Tex. Rev. Civ. Stat. Ann. art. 6701d, § 111 (West 1977)), *aff'd*, 751 S.W.2d 180 (Tex. Crim. App. 1986).

¶27    We are persuaded by the plain-language reasoning employed by these authorities. We must apply our statute as written, and we may not add words to it. *See Turbyne*, 151 P.3d at 567. Moreover, when we deem statutory language to be plain and unambiguous, we do not look to other tools of statutory construction. *See McCoy*, ¶ 38, 442 P.3d at 389.

12

¶28    Accordingly, based on the statutory language, we conclude that the division below erred in determining that section 42-4-206(1) mandates that a vehicle's tail lamps shine only red light.

¶29    In reaching this conclusion, we are not persuaded by the People's assertion that the construction that we adopt today is insufficiently precise. In our view, section 42-4-206(1)'s requirement of "a red light plainly visible from a distance of five hundred feet to the rear" is more than adequate to guide both drivers and police officers.

¶30    Such a construction also establishes a uniform standard that promotes public safety. If a vehicle's tail lamps do not emit a red light plainly visible from the requisite distance, then the safety concerns that the People posit (e.g., preventing another driver from being able to discern the direction in which the vehicle is facing or whether it is backing up) would be obvious. If, however, a vehicle's tail lamps emit a red light plainly visible from five hundred feet, then the safety concerns that motivated the General Assembly would be satisfied because the vehicle's tail lamps would properly communicate to other drivers the direction in which the vehicle is traveling.

¶31    Indeed, in our view, it is the People's construction—requiring that tail lamps emit "only" red light—that can lead to arbitrary and inconsistent results. Under the People's reading of section 42-4-206(1), a police officer could initiate a traffic

13

stop if the officer detects a hairline fracture in a vehicle's tail lamp that emits the tiniest sliver of white light. Such an interpretation would serve no purpose other than to allow traffic stops that have nothing to do with traffic safety. And such stops would likely disproportionately burden those in lower socioeconomic classes who might lack the resources to replace tail-lamp covers that have minor cracks but are otherwise fully serviceable.

¶32 We likewise are unconvinced by the People's contentions that other statutes and the surrounding statutory scheme confirm that section 42-4-206(1) requires only red light. The People cite sections 42-4-215(1), (2), and (7), C.R.S. (2021), which, as to other vehicle lights, allow for ranges of colors from red to amber or from white to amber, and to section 42-12-204, C.R.S. (2021), which allows street-rod vehicles or custom motor vehicles to use "blue dot tail lights" (i.e., red lamps containing a blue or purple insert that is not more than one inch in diameter). In our view, however, statutory provisions allowing for ranges of colored lights in certain circumstances or blue dot tail lights in very specific circumstances shed no light on the legislature's intent in requiring tail lamps to emit a red light plainly visible from a distance of five hundred feet to the rear. None of the statutes on which the People rely require "only" one color, with no room for even the slightest defect in a lamp causing the emission of a sliver of nonconforming light. Moreover, these various statutes are not worded identically

14

to section 42-4-206(1), nor are they in any way inconsistent with it, thus requiring that we attempt to harmonize the various provisions.

¶33 Sections 42-4-215(1), (2), and (7) require that the subject lights be "visible" from a certain distance. Section 42-4-206(1), in contrast, requires that tail lamps emit "a red light plainly visible" from the applicable distance. Given these differences in wording, we are unwilling to infer, as the People do, that the legislature's decision to word sections 42-4-215(1), (2), and (7) as it did suggests a particular intent in the drafting of section 42-4-206(1). Additionally, we presume that the legislature adopted the different limitations set forth in these statutes (e.g., "visible" v. "plainly visible") intentionally, with tail lamps having to meet a higher standard of visibility. *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 21, 488 P.3d 1140, 1145 ("In interpreting a statute, we aim to give effect to every word and presume that the legislature did not use language idly."). Thus, we read section 42-4-206(1) as turning on whether a red light was "plainly visible" from the requisite distance, not on an unstated requirement that only red light be plainly visible from that distance.

¶34 For similar reasons, we do not agree that the language of section 42-4-206(3) indicates a legislative intent in section 42-4-206(1) to require that tail lamps emit only red light. As is the case in the above-described provisions, the language of section 42-4-206(3) is different from the language in section 42-4-206(1). Section

15

42-4-206(3) requires a white light to render the rear registration plate "clearly legible" from the requisite distance whereas section 42-4-206(1) requires tail lamps to emit a red light "plainly visible" from the requisite distance. Given these language distinctions and the different purposes that these respective statutory provisions obviously serve, we are unwilling to infer that because section 42-4-206(3) requires that the rear registration plate be illuminated by a white light, the legislature intended to preclude tail lamps from emitting even a sliver of white light or to mandate that only red light may be emitted.

¶35    Finally, we are unpersuaded by the People's contention that our decision in *Brant* is directly on point and resolves this case. Although we said in dicta in *Brant* that a broken taillight provided a reasonable basis for a traffic stop, *see Brant*, 252 P.3d at 462, we did not describe the nature of the broken taillight in that case, nor did we in any way address the issue now before us.

¶36    For these reasons, we conclude that the division below erred in deciding that section 42-4-206(1) "requires tail lamps to shine only red light." *See McBride*, ¶ 13, 490 P.3d at 814. We conclude, instead, that section 42-4-206(1) imposes liability when a vehicle's tail lamps do not "emit[] a red light plainly visible from a distance of five hundred feet to the rear" and that nothing in that section requires that a vehicle's tail lamps emit only red light.

## C. Sufficiency of the Evidence

¶37 The question thus becomes whether, in light of our construction of section 42-4-206(1), the prosecution presented sufficient evidence to support McBride's conviction for a tail lamp violation. We conclude that it did not.

¶38 At trial, the prosecution had the burden of establishing a prima facie case of McBride's guilt through the introduction of sufficient evidence. *See McCoy*, ¶ 63, 442 P.3d at 392. We must review the record to determine whether the evidence presented to the jury was sufficient in both quantity and quality to sustain McBride's conviction. *See id.* In making this determination, "[w]e consider 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *Id.* (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)). And although we give the prosecution the benefit of every reasonable inference that may fairly be drawn from the evidence, *see Clark*, 232 P.3d at 1292, those inferences "must be supported by a 'logical and convincing connection between the facts established and the conclusion inferred,'" *People v. Donald*, 2020 CO 24, ¶ 19, 461 P.3d 4, 7 (quoting *People v. Perez*, 2016 CO 12, ¶ 25, 367 P.3d 695, 701). A verdict cannot rest on guessing, speculation, conjecture, or a mere modicum of relevant evidence. *Id.* at ¶ 19, 461 P.3d at 7–8.

¶39    Here, the prosecution did not present substantial and sufficient evidence that would have allowed a reasonable jury to find that the Lincoln's tail lamps failed to emit a red light plainly visible from a distance of five hundred feet to the rear.

¶40    As described above, none of the deputies who followed the Lincoln prior to the traffic stop testified at trial that its tail lamps failed to emit plainly visible red light. The second deputy testified that "there was some white light emitting from those bulbs." The third deputy, in turn, testified that "[t]he tail lights were damaged and they were emitting white light." Neither said that the tail lamps emitted only white light. Nor did either deputy deny that red light was plainly visible from their vantage points.

¶41    In addition, the record makes clear that both deputies followed the Lincoln at a relatively close distance. Specifically, the second deputy testified that she was "immediately behind" the Lincoln in her unmarked squad car, including when she observed the Lincoln's tail lamps. The third deputy likewise testified that he observed the tail lamps after he "got behind" the Lincoln. And because neither deputy denied that red light was plainly visible from their positions, no evidence supported a reasonable inference that red light was not plainly visible from a distance of five hundred feet to the rear.

18

¶42 Finally, the photos of the Lincoln that the prosecution introduced at trial showed red tape on the tail lamps that had melted in places, but these photos did not show that only white light was emanating from the tail lamps. Nor did the photos establish that red light was not plainly visible from those lamps either from close range or from five hundred feet to the rear.

¶43 Accordingly, neither the deputies' testimony nor the photos of the Lincoln that the prosecution admitted at trial supported a reasonable inference that the Lincoln failed to emit red light plainly visible from five hundred feet to the rear. To conclude otherwise would amount to nothing more than speculation, which cannot support a jury's verdict. *See Donald*, ¶ 19, 461 P.3d at 7.

¶44 In light of the foregoing, we cannot conclude that the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, was substantial and sufficient to support a conclusion by a reasonable jury that McBride was guilty beyond a reasonable doubt of the charged tail lamp violation. *See McCoy*, ¶ 63, 442 P.3d at 392.

¶45 McBride's conviction of a tail lamp violation must therefore be reversed, and we need not—and do not—address whether the statute would be violated in a hypothetical scenario in which an individual might place a kaleidoscopic array of multicolored lights on the back of a vehicle. Such a scenario might well present a

question as to whether a red light was plainly visible from the requisite distance to the rear, but that question is not before us in this case.

## III. Conclusion

¶46 For these reasons, we conclude that under the plain and unambiguous language of section 42-4-206(1), there is liability when a motor vehicle's tail lamps do not "emit[] a red light plainly visible from a distance of five hundred feet to the rear." We further conclude that nothing in that section requires that a vehicle's tail lamps emit only red light. And because the prosecution did not present substantial and sufficient evidence that would have allowed a reasonable jury to find that the tail lamps of the car that McBride was driving failed to emit a red light plainly visible from a distance of five hundred feet to the rear, we conclude that the evidence was insufficient to support his conviction for a tail lamp violation.

¶47 Accordingly, we reverse the judgment of the division below and remand this case for further proceedings consistent with this opinion.

**JUSTICE HOOD**, joined by **CHIEF JUSTICE BOATRIGHT**, dissented.

JUSTICE HOOD, joined by CHIEF JUSTICE BOATRIGHT, dissenting.

¶48 The majority concludes that the General Assembly was unambiguous in its drafting of section 42-4-206(1), C.R.S. (2021). *See* Maj. op. ¶ 26. Tail lamps must "emit[] a red light plainly visible from a distance of five hundred feet to the rear." § 42-4-206(1). So, if a red light is plainly visible from that distance, some white light (maybe even a lot) is fine. *See* Maj. op. ¶¶ 26–33.

¶49 But the division's contrary conclusion—essentially "red means red (and only red)" or perhaps "what part of 'red' are you struggling with?"—is also at least reasonable. *See People v. McBride*, 2020 COA 111, ¶¶ 14–20, 490 P.3d 810, 814–15. (Unanimous opinions by a division of our court of appeals are rarely otherwise.) Therefore, the plain language of the relevant statute is ambiguous. *See McCoy v. People*, 2019 CO 44, ¶ 38, 442 P.3d 379, 389 ("A statute is ambiguous when it is reasonably susceptible of multiple interpretations.").

¶50 Because it is ambiguous, we may consider the broader policy implications of a "red/white" holding, never mind an even more multi-hued variation that we might be called upon to address down the line. *See* § 2-4-203(1)(e) ("If a statute is ambiguous, the court . . . may consider . . . [t]he consequences of a particular construction."). The majority encourages us to save the "kaleidoscopic array" problem for another day, Maj. op. ¶ 45, but it looms large here.

¶51    After all, nothing in the statutory scheme (after today) would prevent someone from festooning the back of a vehicle with a rainbow of tail lamps if the lamps are legally spaced. *See* §§ 42-4-204(3), -206(1), (2), C.R.S. (2021). If at least one of those lamps emits a red light that is "plainly visible" at five hundred feet, under the majority's interpretation, the vehicle would be in statutory compliance even if the other lamps emitted, say, purple, blue, green, and yellow lights that were also plainly visible at that distance. *See* § 42-4-206(1); Maj. op. ¶¶ 26–33.

¶52    Thus, I agree with the division's primary reasoning, as outlined by the majority. *See* Maj. op. ¶¶ 15–19. It boils down to this: The "*Uniform Safety* Code of 1935" (the name of which speaks volumes about its purpose) is precise as to the requisite color of various lamps. § 42-4-101, C.R.S. (2021) (emphasis added). That precision promotes uniformity, which in turn, promotes public safety. And through a large mass of highly specific regulations, the legislature has effectively declared public safety paramount in this context. *See* § 42-4-102, C.R.S. (2021); *People v. Wright*, 742 P.2d 316, 320 n.7 (Colo. 1987) ("In Colorado, the legislature has expressly stated that, as a matter of policy, traffic laws and enforcement throughout the state should be uniform.").

¶53    Like the division, I fear that the majority's holding invites the use of multiple colors that could confuse and endanger other drivers and would undermine the

2

legislature's stated intent.  I would therefore affirm the division's judgment by concluding that red means *only* red.

¶54    Accordingly, I respectfully dissent.