J-S28041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CORY ALAN HILL | : | |
| | : | |
| Appellee | : | No. 574 MDA 2022 |

Appeal from the PCRA Order Entered March 18, 2022
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0000373-2018

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 15, 2023**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Berks County Court of Common Pleas, which granted the Post Conviction Relief Act ("PCRA")[1] petition filed by Appellee, Cory Alan Hill.  We affirm.

The PCRA court's opinion set forth the relevant procedural history of this appeal as follows:

> [Appellee] was arrested after fleeing a motor vehicle stop after police observed a vehicle with a New Jersey license plate tapping its brakes, the officer observed it negotiate a traffic circle without using a turn signal, and the officer observed an occupant of the vehicle observing police while police followed the vehicle.  [Appellee] waived his arraignment on January 25, 2018, at which time he was represented by [a public defender].  On February 16, 2018, [another public defender] entered his appearance on

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[Appellee's] behalf. The time for filing a pretrial suppression motion expired on or about March 16, 2018. No pretrial motion was filed within that time, nor was there a request for an extension. On May 1, 2018, private counsel Gary Dorsett entered his appearance on behalf of [Appellee]. Almost a year later, private attorney Jay Nigrini entered his appearance on behalf of [Appellee]. On May 8, 2019, Attorney Nigrini filed an omnibus pretrial suppression motion on behalf of [Appellee]. The Commonwealth moved to quash the pretrial suppression motion due to its untimeliness. After a hearing, on June 7, 2019, [the trial court] quashed the motion and did not address its merits.

On August 29, 2019, [Appellee] was convicted following a bench trial of one count of persons not to possess firearms, one count of possession with intent to deliver cocaine, one count of possession of cocaine, one count of possession of a small amount of marijuana, one count of possession of drug paraphernalia, and one count of resisting arrest or other law enforcement. On September 25, 2019, [Appellee] was sentenced to five (5) to twenty (20) years for persons not to possess firearms followed by three (3) to twenty (20) years for possession with intent to deliver cocaine to run concurrent with the other remaining counts. No post-sentence motions or notice of appeal were filed within the time limits.

On May 15, 2020, [Appellee], *pro se*, filed a [motion for leave to appeal *nunc pro tunc*, presenting arguments sounding in ineffective assistance of counsel.[2] The court treated Appellant's filing as a *pro se* PCRA petition and, o]n July 9, 2020, [the PCRA court] appointed [counsel] to assist [Appellee] with the preparation and filing of a [PCRA petition].

\*   \*   \*

---

[2] Despite the nature of Appellee's *pro se* request for relief, the clerk of courts mistakenly forwarded the filing to this Court as if it was a notice of appeal. This Court docketed the filing as a notice of appeal, and Appellee subsequently filed an application to discontinue the matter. This Court granted Appellee's application on September 28, 2020.

[O]n November 23, 2021, [appointed counsel] asked for his appearance to be withdrawn and for new counsel to be appointed due to his withdrawal as county appointed PCRA counsel. On December 15, 2021, [the PCRA court] appointed [current counsel] to represent [Appellee] and entered an order for counsel to prepare and file an amended PCRA petition or a "no-merit letter" as appropriate. On January 11, 2022, [PCRA counsel] filed an amended [PCRA] petition alleging it was ineffective assistance of counsel for [Appellee's] prior counsel to not file a pretrial suppression motion or an extension of time to file one before Attorney Nigrini entered his appearance and filed it in May 2019. On February 15, 2022, a hearing was held to determine whether [Appellee] had a colorable claim for ineffective assistance of counsel for trial counsel's failure to file a pretrial suppression motion or to request an extension for the same prior to Attorney Nigrini's filing over a year late. On March 18, 2022, [the PCRA court] granted the PCRA petition.

On April 13, 2022, the Commonwealth filed a notice of appeal to the Superior Court…. A concise statement of errors complained of on appeal was filed on April 26, 2022.

(PCRA Court Opinion, filed 5/16/22, at 1-3) (internal footnotes and some capitalization omitted).

The Commonwealth now raises two issues on appeal:

Did the PCRA court err by granting relief as [Appellee] failed to prove that his underlying claim is of arguable merit under a statutory construction analysis of 75 Pa.C.S.A. § 3334 as the vehicle stop was valid for failing to use a turn signal when exiting a traffic circle when turning onto another road?

Did the PCRA court err by granting relief as [Appellee] failed to show that "but for" the inaction of original counsel that he was prejudiced by the failure to file a suppression motion where there is no reasonable probability the results would have been different as under Pennsylvania law a failure to use a turn signal when exiting a traffic circle violates 75 Pa.C.S.A. § 3334 when turning onto another road?

- 3 -

(Commonwealth's Brief at 10).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Parker**, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

Regarding questions of statutory interpretation:

Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary. In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.

Generally, a statute's plain language provides the best indication of legislative intent. We will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain meaning would lead to a result that is absurd, impossible of execution or unreasonable. Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning.

**Commonwealth v. Watts**, 283 A.3d 1252, 1255-56 (Pa.Super. 2022) (internal citations and quotation marks omitted).

The Commonwealth's issues are related, and we address them together.

- 4 -

The Commonwealth acknowledges that the state police conducted the underlying motor vehicle stop based upon the driver's failure to use a turn signal, and the trooper "needed probable cause to effectuate the stop." (Commonwealth's Brief at 18). The Commonwealth also asserts that Trooper Erik Sinwich provided the justification for the stop during the bench trial, when he testified that he observed the vehicle at issue exit a traffic circle while using a "quick, partial signal." (*Id.* 19) (quoting N.T. Trial, 8/27/19, at 24). The Commonwealth asserts that Section 3334 of the Motor Vehicle Code mandates the use of turn signals under certain circumstances, and "[t]he question then becomes whether … the use of a turn signal is required when exiting a traffic [circle] and whether … the 'quick, partial signal' was enough" to satisfy the statute. (*Id.*)

The Commonwealth concedes that it "was unable to find any case law by the Pennsylvania appellate courts on the issue of the use of turn signals when exiting a traffic circle." (*Id.*) Therefore, the Commonwealth contends that this Court must engage in statutory interpretation. Based upon the plain meaning of the statutory language, coupled with the definition of a traffic circle from the Pennsylvania Department of Transportation's driver's manual, the Commonwealth maintains that exiting a traffic circle amounts to a "turn" that requires an appropriate signal. (*See id.* at 21). The Commonwealth posits that the "quick, partial signal" utilized by the driver did not comply with Section 3334, and there was no arguable merit to Appellee's claim that prior

- 5 -

counsel was ineffective for failing to challenge the vehicle stop in a timely suppression motion.

Regarding the prejudice prong of the test for ineffective assistance, the Commonwealth argues that the PCRA court did not make "a firm ruling that a turn signal is not required when exiting a traffic circle." (*Id.* at 24). Absent such a finding, the Commonwealth reasons that there was not a "reasonable probability that the outcome would have been different," and Appellee could not satisfy the prejudice prong. (*Id.*) The Commonwealth concludes that the PCRA court erred in granting relief, and this Court must reverse the PCRA court's order. We disagree.

"Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for

ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

- 7 -

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Additionally, the Motor Vehicle Code requires the use of turn signals as follows:

### § 3334.  Turning movements and required signals

**(a) General rule.**—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

**(b) Signals on turning and starting.**—At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

**(c) Limitations on use of certain signals.**—The signals required on vehicles by section 3335(b) (relating to

signals by hand and arm or signal lamps) shall not be flashed on one side only on a disabled vehicle, flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear, nor be flashed on one side only of a parked vehicle except as may be necessary for compliance with this section.

**(d) Discontinuing turn signals.—**Turn signals shall be discontinued immediately after completing the turn or movement from one traffic lane to another traffic lane.

75 Pa.C.S.A. § 3334. "For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa.Super. 2017).

Instantly, Trooper Sinwich testified at trial regarding his observations that prompted the vehicle stop. On December 31, 2017, at approximately 12:40 p.m., Trooper Sinwich was on patrol when he saw a black Ford Focus traveling northbound on Museum Road. The trooper followed the Ford, which was "excessively braking even with no other vehicles around, no vehicles in front." (N.T. Trial at 23). The trooper also "observed three occupants in that vehicle, and the rear occupant behind the driver's seat[, Appellee,] was intently watching me through the rearview mirror." (*Id.*)

Trooper Sinwich followed the vehicle through an intersection with Penn Avenue, at which point the vehicle approached a traffic circle leading to West Reading. (*See id.* at 24). Trooper Sinwich described what happened next as follows:

> I observed the vehicle not signal entering the traffic circle[3] and proceed around to the right, almost completely around the circle, and exit onto what is the one, two, third right onto Reading Avenue with just a quick partial signal.

(***Id.***) After the vehicle exited the traffic circle, Trooper Sinwich conducted a traffic stop. The remainder of the record confirms that Trooper Sinwich stopped the vehicle based upon its failure to use a turn signal. ***See*** Affidavit of Probable Cause, dated 12/31/17, at 1 (stating trooper conducted traffic stop "for vehicle code violation VC 3334 Turning Movements and Required Signals").

In light of this testimony, Appellee's PCRA petition argued that "there is no clear authority requiring a driver to use a turn signal during the negotiation of a traffic circle." (Amended PCRA Petition, filed 1/11/22, at 4). PCRA counsel expanded on this argument at the PCRA hearing as follows:

> That car that [Appellee] was a passenger in had not changed roads but simply been on one road, entered the roundabout and continued on the same road after going around half of the roundabout.
>
> My basic assertion is … that it's not at all clear from reading either the statutes regarding turning devices or the statute regarding roundabouts that it's necessary to use a turn signal when proceeding down a particular roadway that happens to have a roundabout in the middle of it.[4]

---

[3] In its brief, the Commonwealth does not argue that the failure to signal when entering the circle constituted a violation of Section 3334.

[4] To the extent counsel referred to a statue regarding roundabouts, we note that the parties use the terms "roundabout" and "traffic circle" interchangeably. Further, the Motor Vehicle Code governs the right-of-way

*(Footnote Continued Next Page)*

(N.T. PCRA Hearing, 2/15/22, at 5).

The PCRA court reviewed these claims and agreed that "[t]here has been no clear authority established in this Commonwealth as to whether a driver is required to use a turn signal during the negotiation of a traffic circle." (PCRA Court Opinion at 4). Consequently, the court engaged in statutory interpretation, and it reviewed case law from other jurisdictions with similar statutory provisions. Based upon this analysis, the PCRA court found that Appellee was entitled to relief:

> [L]ooking at other jurisdictions, there are numerous states where a turn signal is not required when navigating a roundabout because the statute for use of turn signals is too ambiguous to require the use of turn signals in a roundabout.
>
> As there is no clear authority in the Commonwealth requiring the use of turn signals when navigating a roundabout, there was a basis for previous counsel to file a timely pretrial suppression motion for all evidence gathered [as] a result of the traffic stop for failure to use a turn signal.
>
> \* \* \*
>
> [The PCRA court also] finds that [Appellee] has shown prejudice due to counsel's failure to file a pretrial suppression motion timely or to request an extension of time to file a pretrial motion.

(PCRA Court Opinion at 5-6) (internal citations omitted).

_____

for vehicles negotiating traffic circles. **See** 75 Pa.C.S.A. § 3321(b) (stating that traffic in traffic circle shall have right-of-way). The statute, however, does not mention the use of turn signals in conjunction with driving through a traffic circle.

Our review of the relevant case law from other jurisdictions confirms the PCRA court's findings. **See Noble v. State**, 357 P.3d 1201, 1206 (Alaska App. 2015) (stating turn signal statute was formulated before state began constructing roundabouts; while statute requires motorists to signal at least 100 feet before turning, it was unclear whether entering or exiting roundabout constituted turn; court declined to "stretch" language of statute governing turn signals to make it apply to roundabouts); **State v. Davis**, 143 N.E.3d 343, 347 (Ind.App. 2020) (holding defendant did not violate turn signal statute when he did not signal upon exiting roundabout; any assumption that statute specifically applied to roundabouts fails to withstand scrutiny when considering "reality and logistics" of roundabouts); **People v. McBride**, 490 P.3d 810 (Colo.App. 2020), *reversed in part on other grounds*, 511 P.3d 613 (Colo. 2022) (explaining turn signal statute did not apply to entering or exiting roundabouts; while statute requires motorists to signal not less than 100 feet before turning in urban or metropolitan areas, entrances and exits of roundabouts are often less than 100 feet apart).

Here, the PCRA court carefully evaluated Section 3334, and we cannot say that the court committed legal error in its interpretation of the statute. **See Parker, supra**. Thus, we agree that Appellee demonstrated the arguable merit of his claim that prior counsel should have filed a timely suppression

motion challenging the vehicle stop on this basis.[5] **_See Smith, supra_**; **_Poplawski, supra_**. Further, the PCRA court properly determined that Appellee suffered prejudice due to prior counsel's failure to pursue this claim in a timely suppression motion. **_See Spotz, supra_**. Accordingly, we affirm the order granting PCRA relief in favor of Appellee.

Order affirmed.

Judge Olson joins this memorandum.

Judge McLaughlin files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2023

---

[5] We also emphasize that the Commonwealth's argument is limited to its assertion that "an individual exiting from a traffic circle must use an appropriate signal when turning or moving from one lane to another under Pennsylvania law." (Commonwealth's Brief at 14). Consequently, the Commonwealth contends that the subject vehicle's "quick, partial signal" upon exiting the traffic circle was inadequate under Section 3334. Assuming without deciding that Section 3334 mandates the use of a turn signal upon exiting a traffic circle, our review reveals that the record is silent regarding the approximate speed of the subject vehicle and the distance traveled between the start of the turn signal and the vehicle's exit from the traffic circle. Likewise, the Commonwealth's brief is devoid of such specifics. (**_See_** Commonwealth's Brief at 21-22). Absent more, we cannot conclude that the "quick, partial signal" was inappropriate under the circumstances. Thus, this is an alternative argument that Appellee's prior counsel could have raised in a timely filed suppression motion.